IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| DEWEY GRANTHAM,<br><br>    Plaintiff,<br><br><br><br>vs.<br><br><br>NUCOR CORPORATION and JOHN DOES 1-20,<br><br>    Defendants. | MEMORANDUM DECISION AND ORDER DENYING DEFENDANT NUCOR CORPORATION'S MOTION FOR SUMMARY JUDGMENT<br><br><br><br><br>Case No. 2:07-CV-229 TS |

This matter comes before the Court on Defendant Nucor Corporation's Motion for Summary Judgment. For the reasons discussed below, the Court will deny Defendant's Motion.

## I.  SUMMARY JUDGMENT STANDARD

Summary judgment is proper if the moving party can demonstrate that there is no genuine issue of material fact and it is entitled to judgment as a matter of law.[1]  In considering whether genuine issues of material fact exist, the Court determines whether a reasonable jury could return a verdict for the nonmoving party in the face of all the evidence presented.[2]  The Court is

---

[1]Fed. R. Civ. P. 56(c).

[2]*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Clifton v. Craig*, 924 F.2d 182, 183 (10th Cir. 1991).

required to construe all facts and reasonable inferences in the light most favorable to the
nonmoving party.[3]

## II. FACTUAL BACKGROUND

On August 7, 2003, Plaintiff was working as a long-haul truck driver for PFT Robertson,
Inc.  Plaintiff had been a truck driver for approximately eight years.  Defendant Nucor operates a
steel mill.  On that day, Plaintiff arrived at Defendant Nucor's facility in Plymouth, Utah,
sometime between 5:00 p.m. and 6:00 p.m., to pick up a load of angle iron for delivery.  Plaintiff
had never hauled products or other materials from any of Defendant Nucor's facilities prior to
August 7, 2003.

After he arrived at Nucor's facility, Plaintiff's truck was loaded with a load of angle iron
by Nucor employees.  Nucor was exclusively responsible for loading the steel onto Plaintiff's
trailer.

The load consisted of eleven bundles of twenty foot long pieces of angle iron.  The
parties dispute how that angle iron was loaded, but for the purposes of this Motion the Court
must accept Plaintiff's version of events.  Plaintiff testified that three of the bundles were loaded
on the rear of the trailer and were not stacked and that the remaining eight bundles were stacked
on the front of the trailer.  The bundles were held together by three heavy gauge metal tie wires
on each bundle.

The bundles were loaded in such a way that there were gaps of three to four inches
between the bundles.  Plaintiff testified that he was concerned with the gaps in between the
bundles and that he expressed that concern to an employee of Defendant Nucor.  Plaintiff

---

[3]*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986);  *Wright v. Southwestern Bell Tel. Co.,* 925 F.2d 1288, 1292 (10th Cir. 1991).

requested that the bundles be moved closer together or to have something put in between them to help secure the load. Plaintiff was told by a Nucor employee that he—the Nucor employee—had been loading trucks for quite a while and that he knew what he was doing. Plaintiff was then told to go stand by his truck.

After the steel was loaded, Plaintiff chained and tarped the load in order to secure it. Plaintiff then transported the load to a facility in Santa Clara, California. While Plaintiff was untarping the load, he fell three separate times. On the first two occasions, Plaintiff's foot slid off the steel and went between two of the stacks of bundles, causing him to hit his knees. On the third occasion, the bundle that Plaintiff was walking on shifted causing him to lose his balance and fall on his trailer, injuring his knees and back.

### III.  DISCUSSION

A.      THE *SAVAGE* RULE

Defendant Nucor argues that it is not liable for Plaintiff's injuries because a carrier—Plaintiff here—is generally responsible to ensure proper loading of the cargo he carries. This rule was set out by the Fourth Circuit Court of Appeals in *United States v. Savage Truck Line, Inc.*[4]

> The primary duty as to the safe loading of property is therefore upon the carrier. When the shipper assumes the responsibility of loading, the general rule is that he becomes liable for the defects which are latent and concealed and cannot be discerned by ordinary observation by the agents of the carrier; but if the improper loading is apparent, the carrier will be liable notwithstanding the negligence of the shipper.[5]

---

[4]209 F.2d 442 (4th Cir. 1953).

[5]*Id.* at 445.

3

"Initially, the *Savage* rule applied solely to damage caused to the cargo being shipped.  In subsequent years, courts extended the *Savage* reasoning to include personal injuries to employees of carriers caused by the negligent loading of goods."[6]  "Most courts now accept the rationale of *Savage* and require carriers to take responsibility for the loads they carry, even if those loads have been improperly loaded by others."[7]  "The exception to the general rule laid out by *Savage* occurs when the shipper loads cargo negligently and those loading defects are latent and concealed so that a reasonable inspection of the load by the carrier will not uncover the shipper's negligence."[8]

The issue here is whether the defects in this case were latent and concealed, therefore subjecting Defendant to potential liability, or whether they were patent, thus absolving Defendant of liability.  Defendant argues that the gaps in between the angle iron were patent.  Defendant points out that Plaintiff testified that he saw the gaps, that he voiced concern over the gaps, and that he recognized that the gaps had the potential of making the load more difficult to secure.  Plaintiff argues that there are genuine issues of material facts as to whether the defects were latent and concealed or patent.  In support of this argument, Plaintiff states that he had never hauled products from Defendant's facility before and was unfamiliar with their loading technique.  Plaintiff alleges that he voiced concern over the way the angle iron was being loaded and that he was assured by Defendant's employee that the employee had been loading trucks for quite a while and that he knew what he was doing.

---

[6]*Decker v. New England Pub. Warehouse, Inc.*,749 A.2d 762, 767 (Me. 2000) (citation omitted).

[7]*Id.*

[8]*Id.*

"[W]hether a defect in loading is obvious through ordinary observation or concealed is a question of fact."[9]  It is true, as Defendant points, out that the gaps between the stacks were clearly visible to Plaintiff.  However, this fact is not dispositive.  A number of courts have addressed similar issues and found that summary judgment was inappropriate.  In *Ebasco Services, Inc. v. Pacific Intermountain Express Co.*, the court found summary judgment was not appropriate in a case where recovery was sought for damages done to a pump motor when the top part of the motor struck the underside of a bridge.[10]  The motor was one foot over the height limit,[11] but it was represented to the carrier that the height of the motor had been measured and was safe to be driven.[12]  The court found that while the defect—the height of the shipment—was apparent to the naked eye, the question of whether the defect was patent was not appropriate for summary judgment because of the statements made by the employees of the shipper.[13]

The case of *Franklin Stainless Corp. v. Marlo Transport Corp.*,[14] is remarkably similar to the case before the Court.  In that case, the shipper loaded trucks with steel coils down the center

---

[9]*Smart v. Am. Welding & Tank Co., Inc.*, 826 A.2d 570, 575 (N.H. 2003).  *See also Ebasco Servs., Inc. v. Pac. Intermountain Express Co.*, 398 F.Supp. 565, 569 (S.D.N.Y. 1975) ("The question of whether the defect here was patent is . . . not one for resolution by summary judgment.");  *W.J. Casey Trucking & Rigging Co. v. Gen. Elec. Co.*, 376 A.2d 603, 607 (N.J. Super. Ct. Law Div. 1977) ("The question of "patency," . . . is one for the jury.").

[10]*Ebasco Servs., Inc.*, 398 F.Supp. at 566.

[11]*Id*. at 568.

[12]*Id*. at 566.

[13]*Id*. at 568–69.

[14]748 F.2d 865 (4th Cir. 1984).

of the trailer.[15]  The carrier informed the shipper that he had never hauled steel coils and asked whether the load was secure.[16]  The shipper assured the carrier that this was a standard loading method and that there would be no trouble with the load.[17]  The court found that the loading of the steel coils down the center of the trucks without strapping or chocking was open and obvious to the carrier.[18]  It did not follow, however, that the defect in that manner of loading was open and obvious.[19]  The court considered important the assurances that were given, the fact that the carrier relied on those assurances, and that the carrier believed that the loading was proper.[20]

Another example is found in *Alitalia v. Arrow Trucking Co*.[21]  That case involved the transportation of an engine which violated Arizona's height limit and was therefore damaged when it hit a bridge.[22]  There, the height of the engine was obvious,[23] but that did not mean that the defect was patent.[24]  The plaintiffs had presented evidence indicating that the excessive height may have been concealed by the shipper.[25]  Because a reasonable trier of fact could find that the

---

[15]*Id.* at 866.

[16]*Id.*

[17]*Id.*

[18]*Id.* at 868.

[19]*Id.*

[20]*Id.* at 869.

[21]977 F.Supp. 973 (D. Ariz. 1997).

[22]*Id.* at 975.

[23]*Id.* at 984.

[24]*Id.*

[25]*Id.* at 985.

defect was latent and concealed, summary judgment was inappropriate.[26]

A more recent example can be found in *Sygenta Crop Production, Inc. v. Doyle Brant, Inc.*[27]  In that case, the shipper had loaded the trailer by placing containers down the center of the trailer with no supports on the sides.[28]  The defendants argued that this defect was apparent, not latent and concealed.[29]  The court found that there were genuine issues of material fact as to whether the alleged defect in the loading of the trailer was apparent, which prevented summary judgment.[30]  In particular, the court looked to the following facts.  The driver had testified that he had never hauled the type of container in which the product was shipped.[31]  The driver asked an employee of the shipper if the containers should be secured and was told by the employee that the containers would not shift and that no additional support was needed.[32]  The driver believed that the employee loading the trailer had loaded such containers before.[33]  Moreover, the shipper's shipping supervisor told the driver that, in his opinion, the load was safe.[34]  Based on these things, the court found summary judgment was inappropriate.[35]

---

[26]*Id.* at 986.

[27]2008 WL 167293 (W.D. Ky. Jan. 16, 2008).

[28]*Id.* at *2.

[29]*Id.*

[30]*Id.* at * 3.

[31]*Id.*

[32]*Id.*

[33]*Id.*

[34]*Id.*

[35]*Id.*

Here, the Court finds that a reasonable jury could find that the defects here were latent and concealed.  In making this determination, the Court considers a number of facts to be important.  Plaintiff had never hauled products from Nucor's facility before.  Thus, he was unfamiliar with their process for loading angle iron.  Plaintiff saw the gaps in the stacks and expressed his concern to a Nucor employee.  Plaintiff was told that the employee had been loading trucks for quite a while and that he knew what he was doing.  Based on these factors, the Court finds that genuine issues of material fact preclude the Court from granting summary judgment for Defendant.

B.      FEDERAL MOTOR CARRIER SAFETY REGULATIONS

Defendant Nucor also argues that it is entitled to summary judgment under Federal Motor Carrier Safety Regulations.  49 C.F.R. § 392.9(a) states:

> A driver may not operate a commercial motor vehicle and a motor carrier may not require or permit a driver to operate a commercial motor vehicle unless—
> (1) The commercial motor vehicle's cargo is properly distributed and adequately secured as specified in §§ 393.100 through 393.136 of this subchapter.

Defendant has not presented evidence that the cargo was not properly distributed and adequately secured.  The evidence presented seems to point to the opposite conclusion.  Plaintiff testified that he secured the load before he began his trip and continued to do so until he reached his final destination.  Thus, summary judgment is inappropriate on this ground.

IV.  CONCLUSION

It is therefore

ORDERED that Defendant Nucor Corporation's Motion for Summary Judgment (Docket No. 19) is DENIED.  The hearing set for August 26, 2008, is STRICKEN.

DATED   August 20, 2008.

BY THE COURT:

_____

TED STEWART
United States District Judge